[Cite as *State v. Faulkner*, 2021-Ohio-733.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-20 |
| | : | |
| v. | : | Trial Court Case No. 2020-TRC-280 |
| | : | |
| PAUL FAULKNER | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of March, 2021.

. . . . . . . . . . .

MARK M. FEINSTEIN, Atty. Reg. No. 0065183, Municipal Court Prosecutor's Office, 205 South Main Street, 2nd Floor, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Defendant-Appellant Paul Faulkner pled no contest to and was found guilty of operating a vehicle while under the influence of alcohol or drugs (OVI), in violation of R.C. 4511.19(A)(1)(a) (second violation in ten years), a first-degree misdemeanor. Prior to entering his plea, the trial court overruled his motion to suppress evidence after a hearing. Faulkner appeals his conviction, claiming that the trial court erred in denying his motion to suppress the results of his urine test. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

**{¶ 2}** At approximately 1:15 a.m. on February 16, 2020, Champaign County Sheriff's Deputy Christopher Culler initiated a traffic stop after observing a 2002 Chevy truck cross the marked white line several times and drive 10 to 20 mph below the speed limit on northbound South U.S. Highway 68 in Urbana. Deputy Culler approached the truck and spoke with Faulkner, the driver of the vehicle. The deputy believed that Faulkner was under the influence of "something" after speaking with and observing him. The deputy then conducted field sobriety tests, which Faulkner failed. Faulkner admitted to taking several medications around 10:00 p.m. and drinking two beers about five hours before the stop.

**{¶ 3}** After another deputy arrived on the scene, Deputy Culler placed Faulkner under arrest for OVI and informed Faulkner of his *Miranda* rights. Deputy Culler read BMV Form 2255 to Faulkner, and Faulkner agreed to provide a urine sample. (The deputy's court statement filed with the complaints indicated that Deputy Culler read Form 2255 at the scene, but Culler testified that he read it to Faulkner at the patrol office.)

{¶ 4} At 1:50 a.m., Faulkner provided a urine sample for Deputy Culler at the Urbana patrol station. Faulkner urinated into a screw top plastic container, which Deputy Culler sealed. The deputy wrote his name, Faulkner's name, and the date and time of collection on the seal. The sample was sent to the Ohio State Highway Patrol Lab for analysis.

{¶ 5} Faulkner was charged with OVI, in violation of R.C. 4511.19(A)(1)(a) (second violation in ten years); slow speed, in violation of R.C. 4511.22; and failure to drive in marked lanes, in violation of R.C. 4511.33(A). On February 18, 2020, Faulkner pled not guilty to the charges in the Champaign County Municipal Court.

{¶ 6} Emily McAnulty, a criminalist in the toxicology section of the Ohio State Highway Patrol Lab, tested Faulkner's urine sample for drugs. She reported that the sample contained 46.51 ng/ml (plus or minus 4.65 ng/ml) of a THC metabolite.

{¶ 7} On May 7, 2020, Faulkner moved to suppress "any and all evidence garnered from his urine screen." He asserted that the deputy had failed to comply with the Ohio Department of Health's approved methods for collection, storage, and testing of the urine. On May 21, the trial court held a suppression hearing, during which the State presented the testimony of Deputy Culler and McAnulty, as well as four exhibits. McAnulty brought the urine sample to the suppression hearing, and she indicated that the white label on it had been prepared by the deputy. The sample was not offered into evidence. Faulkner testified on his own behalf at the hearing.

{¶ 8} The parties submitted post-hearing memoranda. Faulkner's memorandum argued that Ohio Department of Health (ODH) regulations had not been followed properly, because the information required by Ohio Adm.Code 3701-53-05(E) was not on the

container itself. Faulkner asserted that "said information was only included on a label later placed upon the container and outside the view of the Defendant."

**{¶ 9}** The trial court overruled the motion to suppress, concluding that there was substantial compliance with Ohio Adm.Code 3701-53-05, the regulation concerning the collection of blood and urine samples.

**{¶ 10}** On August 6, 2020, Faulkner pled no contest to OVI (second violation in ten years). In exchange for the plea, the State dismissed the slow speed and marked lanes charges. The trial court sentenced Faulkner to 180 days in jail, with 160 days suspended and credit for 8 days already served. The court also imposed a $900 fine plus court costs, for a total of $1,246. The court suspended Faulkner's driver's license for five years and placed him on community control for 36 months.

**{¶ 11}** Faulkner appeals from the trial court's judgment.

## II. Compliance with ODH Labeling Requirements

**{¶ 12}** In his sole assignment of error, Faulkner claims that the trial court erred in overruling his motion to suppress. He argues that the deputy failed to substantially comply with the labeling requirements of Ohio Adm.Code 3701-53-05 when collecting Faulkner's urine sample. Faulkner does not challenge the validity of the traffic stop or his arrest, nor does he claim on appeal that the deputy failed to comply with other requirements of Ohio Adm.Code 3701-53-05.

**{¶ 13}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-

116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 14} R.C. 4511.19(D)(1)(b) and R.C. 3701.143 authorize the director of health to promulgate regulations for analyzing bodily substances for purposes of R.C. 4511.19(A). *See State v. Baker*, 146 Ohio St.3d 456, 2016-Ohio-451, 58 N.E.3d 1114, ¶ 25. Ohio Adm.Code 3701-53-05, which was promulgated by the director of health, concerns the collection of blood and urine samples. With respect to urine samples, that section provides:

> (D) The collection of a urine specimen must be witnessed to assure that the sample can be authenticated. Urine shall be deposited into a clean glass or plastic screw top container which shall be capped, or collected according to the laboratory protocol as written in the laboratory procedure manual[.]
>
> (E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains at least the following information:
>
> > (1) Name of suspect;
> >
> > (2) Date and time of collection;
> >
> > (3) Name or initials of person collecting the sample; and
> >
> > (4) Name or initials of person sealing the sample.
>
> (F) While not in transit or under examination, all blood and urine specimens

shall be refrigerated.

Ohio Adm.Code 3701-53-05(D)-(F).

{¶ 15} When the admissibility of the result of a blood or urine test is challenged in a motion to suppress, the State bears the burden of showing substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm.Code Chapter 3701-53. *See*, *e.g.*, *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24, ¶ 27; *State v. Aicher*, 2018-Ohio-1866, 112 N.E.3d 85, ¶ 31 (2d Dist.). Substantial compliance is met when there are only "minor procedural deviations" from the proscribed standards. *Burnside* at ¶ 34.

{¶ 16} If the State meets its burden of going forward with evidence demonstrating substantial compliance, the test result is presumed admissible. *E.g., Aicher* at ¶ 31; *State v. Tenney*, 2d Dist. Montgomery No. 24999, 2012-Ohio-3290, ¶ 5; *State v. Hardesty*, 5th Dist. Stark No. 2018CA00178, 2020-Ohio-246, ¶ 23, citing *Baker* at ¶ 23. The burden then shifts to the defendant to rebut the presumption by demonstrating prejudice from the State's failure to strictly comply with the applicable regulations in the Ohio Administrative Code. *Burnside* at ¶ 24; *Tenney* at ¶ 5.

{¶ 17} Deputy Culler testified at the suppression hearing about the procedures he used to obtain a urine sample from Faulkner. The deputy said that he retrieved a test kit provided by the Ohio State Highway Patrol Lab, opened the box in front of Faulkner, and examined the plastic container to ensure that it was not damaged. Deputy Culler testified that he wrote his name, Faulkner's name, the date, and the time on the seal prior to obtaining a sample from Faulkner. (Supp. Tr. 11, 13.) Deputy Culler stated on cross-examination that Faulkner's name, the deputy's name, and the time and date of collection were not written on the plastic container itself. (Supp. Tr. 11-12.)

{¶ 18} Deputy Culler testified that he escorted Faulkner to a bathroom, where Faulkner provided a urine sample with the deputy watching.   Deputy Culler indicated that he added a stabilizer to the urine sample and "immediately" placed the seal over the top of the screw cap to seal the container.   (Supp. Tr. 5, 11.)    The deputy testified that the seal was placed in such a manner that it covered both the screw top and the container itself and the seal would be broken if someone tampered with it; he stated that the crime lab "would know immediately."   (Supp. Tr. 13.)

{¶ 19} The deputy then placed the urine sample back into the original box.   He completed a crime lab submission form, placed the form in the box, and sealed the box with two evidence labels on both sides.   (Supp. Tr. 5.)    The box was sent "right off" to the State Highway Patrol Crime Lab.   Culler identified a Property Control/Crime Lab Submission Form (State's Exhibit A) as the form he completed and placed inside the box. The form requested examination for alcohol and all available drugs.

{¶ 20} The Ohio State Highway Patrol Crime Lab received Faulkner's sealed urine sample on February 19, 2020.   (State's Exhibit B.)   Edward Yingling performed an alcohol test on the sample.   Emily McAnulty subsequently tested the sample for any types of drugs.

{¶ 21} McAnulty testified at the suppression hearing about the chain of custody at the crime lab.   On review of the accompanying paperwork, McAnulty stated that she saw no indication of any break in the chain of custody for the sample.   McAnulty testified that the lab's chain of custody report (State's Exhibit C) indicated that the urine sample was sealed upon receipt, and there was no indication on the additional internal paperwork (State's Exhibit B) that there were issues with tampering or other abnormalities.

McAnulty further stated that the paperwork indicated that the sample had been properly refrigerated and packaged. Based on her experience of having conducted 7,000 to 8,000 tests, McAnulty stated her opinion that the collection, storage, and testing of the sample complied with ODH regulations.

{¶ 22} On cross-examination, defense counsel questioned McAnulty about the sample's movement through the lab and when the sample was taken in and out of refrigeration. During defense counsel's questioning, McAnulty stated that samples are not resealed, because the lab had found that "the types of seals that we would have to add would obscure the original seal to where you wouldn't be able to read the other identifying information." (Supp. Tr. 33.) McAnulty stated that the refrigerators are secured and only limited individuals have access. She indicated that once testing is complete, the sample is placed in a plastic heat-sealed bag and then placed in the lab's freezer.

{¶ 23} Testifying on his own behalf, Faulkner stated that he had driven a tractor trailer for 25 years and had submitted to at least 150 urine tests related to that employment. As to the events of February 16, Faulkner testified that Deputy Culler took him to a room (not a restroom) where Faulkner urinated into a plastic cup. Faulkner stated that the deputy put the cap on the container, but did not seal it, and then walked out of the room. Faulkner had not seen the sample since. Faulkner testified that, based on his past experience, the sample "was supposed to go into a chain of evidence bag, and they seal it; and I'm to initial that bag too." (Supp. Tr. 39-40.) Faulkner further stated that "the sample that we just saw" at the suppression hearing was not the "vial" that he had urinated into and that he had never seen that seal before. On cross-

examination, Faulkner acknowledged that he had not previously provided a urine sample at a patrol office under the circumstances in this case. (Supp. Tr. 40.) Faulkner further stated that he could not prove that the deputy tampered with the sample.

{¶ 24} In denying the motion to suppress, the trial court credited Deputy Culler's testimony, stating that the deputy's testimony established substantial compliance with ODH regulations.

{¶ 25} On appeal, Faulkner argues that Deputy Culler "totally failed to label the urine specimen container" and, consequently, the deputy failed to substantially comply with ODH regulations. Faulkner states: "Here, the crime lab received an unmarked container and its reliance on labeling placed on the outside of the box containing the container is woefully inadequate in satisfying chain of custody requirements of law." Faulkner relies on *State v. Butt*, 2d Dist. Montgomery No. 16215, 1997 WL 568013 (Aug. 27, 1997), to support his contention.

{¶ 26} The evidence at the suppression hearing refutes Faulkner's assertion that the label was only placed on the outside of the box containing Faulkner's urine sample. Rather, Detective Culler's testimony established that Faulkner urinated into a plastic screw top container and that the deputy placed a seal on the screw top and container that included Faulkner's name, the deputy's name, and the date and time of collection. Moreover, Ohio Adm.Code 3701-53-05(E) expressly provides for the information to be written on "a label"; the information need not be written directly onto the plastic container, as Faulkner asserted in the trial court. Based on the State's evidence, which the trial court credited, we conclude that the deputy substantially, if not strictly, complied with the requirements of Ohio Adm.Code 3701-53-05(D)-(E). *Accord Hardesty*, 5th Dist. Stark

No. 2018CA00178, 2020-Ohio-246, at ¶ 28 (finding the officer substantially complied with collection and labeling requirements of Ohio Adm.Code 3701-53-05(E) when he "capped the urine specimen and sealed the cup with evidence tape which was labeled with Appellant's name, date, time of collection and the officer's initials").

{¶ 27} At the suppression hearing, Faulkner asserted that the deputy's collection procedure was defective, because he (Faulkner) did not initial the container. Ohio Adm.Code 3701-53-05(E) contains no requirement that a suspect initial the container or label.

{¶ 28} We further find *Butt* to be distinguishable. In that case, the record demonstrated that a sample of Butt's blood was drawn and placed in a stoppered vial to which a sticker was affixed containing the information required by Ohio Adm.Code 3701-53-05(E). *Butt*, 2d Dist. Montgomery No. 16215, 1997 WL 568013, at *4. However, the sticker did not seal the vial, and the vial itself was not otherwise sealed. The vial was placed for shipment in a small box that was sealed with "evidence tape." *Id*. On review of the trial court's denial of Butt's motion to suppress, we held that the procedure did not substantially comply with the *sealing* requirements of Ohio Adm.Code 3701-53-05(E). We noted that "[t]he procedure that was followed here could allow the blood sample to be contaminated before the unsealed vial was placed in the box, or afterward if the box was opened then taped closed again." *Id*.

{¶ 29} The defendant in *Butt* did not claim that the label on the blood sample did not comply with ODH regulations, and Faulkner does not claim on appeal that Deputy Culler failed to comply with the regulations regarding the sealing of the container. Even if Faulkner had, Deputy Culler testified that he placed the seal in such a manner that it

covered both the screw top and the container itself and that the seal would be broken if it were tampered with. McAnulty further testified that Faulkner's urine specimen container was sealed and labeled appropriately when it arrived at the lab. Accordingly, there was substantial compliance with the sealing requirements of Ohio Adm.Code 3701-53-05(E).

{¶ 30} Faulkner's assignment of error is overruled.

## III. Conclusion

{¶ 31} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mark M. Feinstein
Gary C. Schaengold
Hon. Gil S. Weithman