O’Donnell, J.
{¶ 1} The state of Ohio appeals from a judgment of the Eleventh District Court of Appeals affirming the suppression of Michael Baker’s blood-alcohol test results in connection with a charge of operating a motor vehicle under the influence of *457 alcohol. In a divided decision, the appellate court ruled that the state had failed to establish substantial compliance with Ohio Adm.Code 3701-53-05(F), which requires blood and urine specimens to be refrigerated when not in transit or under examination, and the test results were therefore inadmissible.
{¶ 2} Our review of the facts in this case reveals that Baker’s blood sample was not refrigerated for a period of four hours and ten minutes before being placed in transit; however, we have previously held that the failure to refrigerate a sample for a period of up to five hours substantially complied with the administrative regulation. See State v. Plummer, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), and State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216.
{¶ 3} Accordingly, based on these facts and the applicable law, the state has established a presumption of admissibility with regard to the blood-alcohol test results, and we therefore reverse the judgment of the court of appeals; however, in conformity with State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, the case is remanded to the trial court with instructions to provide Baker with an opportunity to demonstrate prejudice consistent with the burden-shifting test we established in Burnside, as further clarified in this opinion.
Facts and Procedural History
{¶ 4} On March 6, 2011, Trooper Charles Emery of the Ohio State Highway Patrol responded to a call of a pedestrian walking eastbound in a westbound lane of U.S. Route 6 in Ashtabula County. While en route to the location, Emery learned that the pedestrian had been struck by a vehicle and died. He arrived at the scene around 12:30 a.m. and identified Baker as the driver of the vehicle that struck the decedent. He instructed Baker to sit in his cruiser and complete a crash statement form while he investigated the scene. Baker began to complete the form, but he indicated that he wanted to speak with an attorney before filling out any paperwork.
{¶ 5} Upon returning to his cruiser, Emery detected a strong odor of alcohol, and he asked Baker whether he had had anything to drink. Baker told Emery that he had had six or seven beers and had been coming from a party at a friend’s house when the accident occurred. Emery administered a horizontal gaze nystagmus test and a portable breath test and also Mirandized Baker, but he did not arrest him. He then advised Baker he intended to take him to a hospital to have blood drawn, and Baker agreed to provide a blood sample without a search warrant.
{¶ 6} Emery drove Baker to St. Joseph’s Hospital in Andover, administered the remaining portions of the field sobriety test, and escorted Baker to the emergency room, where Baker consented to having his blood drawn. At 1:50 a.m., a hospital paramedic drew Baker’s blood, placed it in two tubes from a kit *458 that Emery supplied, signed the labels in the kit, and handed the tubes to Emery, who affixed the labels to them and put them in a sealed box.
{¶ 7} Emery drove Baker home without issuing a citation, returned to the highway patrol post to finish paperwork, and kept the box with the blood sample in his cruiser. At 6:00 a.m., when his shift ended, he mailed the box to the Ohio State Highway Patrol Crime Laboratory in Columbus.
{¶ 8} A criminalist at the Columbus crime lab used the gas chromatography method to test the sample for alcohol. Testing of Baker’s blood showed “0.095 grams by weight of alcohol per one hundred milliliters (grams percent) of whole blood.”
{¶ 9} On June 21, 2011, the state filed a complaint in the Ashtabula County Court, alleging that Baker violated R.C. 4511.19(A)(1)(b), which prohibits a person from operating a vehicle within the state if the person has “a concentration of- eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person’s whole blood.” That same day, an Ashtabula County Grand Jury indicted Baker, charging him with a violation of R.C. 4511.19(A)(1)(b), a misdemeanor of the first degree. On the state’s motion, the case was transferred to the county court for prosecution on the state’s complaint.
{¶ 10} Baker pleaded not guilty and moved to suppress the evidence obtained from him, including the laboratory and chemical tests of his alcohol level. After holding a hearing, the trial court granted Baker’s motion as to the suppression of the blood-alcohol test results, stating: “As to the failure to refrigerate the sample, * * * the court finds that this is not a de minimis shortcoming.”
{¶ 11} The state and Baker each appealed to the Eleventh District Court of Appeals, which affirmed suppression of the blood-alcohol evidence in a divided decision. Two judges on the panel agreed that the state had failed to establish substantial compliance with the requirement in Ohio Adm.Code 3701-53-05(F) that blood and urine specimens be refrigerated when not in transit or under examination, but they disagreed on the consequence of violating the regulation. One jurist opined that the failure to substantially comply rendered the blood-test result inadmissible, while the other concluded that it put the burden on the state to prove the reliability of the blood-test result before it could be admitted at the suppression hearing. The third judge on the panel dissented and would have held that the state established substantial compliance pursuant to State v. Price, 11th Dist. Geagua No. 2007-G-2785, 2008-Ohio-1134, 2008 WL 696116, ¶ 26, which had decided that a trooper’s retention of a blood specimen in an unrefrigerated state for six hours did not violate Ohio Adm.Code 3701-53-05(F).
{¶ 12} We accepted the state’s discretionary appeal to consider whether the state substantially complied with Ohio Adm.Code 3701-53-05(F) when it allowed *459 a blood sample to remain unrefrigerated for four hours and ten minutes before placing it in the mail and whether, absent a showing of prejudice, the blood-alcohol test results are admissible. 141 Ohio St.3d 1421, 2014-Ohio-5567, 21 N.E.3d 1114.
Arguments of the Parties
{¶ 13} The state asserts that according to this court’s precedent, it substantially complied with Ohio Adm.Code 3701-53-05(F), noting that in State v. Plummer, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), we determined that a urine sample, which was not refrigerated for one hour and 25 minutes before mailing and for an additional three to four hours after arrival at the laboratory, substantially complied with the refrigeration requirements in the Ohio Administrative Code. The state further notes that in State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 50, fn. 2, we recognized and applied Plummer’s holding that a sample unrefrigerated for as long as five hours substantially complied with Ohio Adm.Code 3701-53-05(F). It also contends that in Price, the court of appeals concluded that a lack of refrigeration for several hours between the collection of a sample and its placement in transit constituted substantial compliance with the administrative rule and that other Ohio appellate courts have reached similar conclusions. The state maintains that because Baker did not demonstrate prejudice from the lack of refrigeration of the sample before transit, the trial court erred in granting his motion to suppress.
{¶ 14} Baker, on the other hand, claims that the state did not comply with Ohio Adm.Code 3701-53-05(F) and that Emery could have refrigerated the blood sample while he was at the highway patrol post but failed to do so because it was not the highway patrol’s usual procedure, and he contends the highway patrol may not overrule or modify the requirements of the Ohio Administrative Code. He notes that the state did not offer any expert testimony at the suppression hearing to demonstrate that Emery substantially complied with the administrative rule or show that the failure to refrigerate the sample did not affect the reliability of the blood-alcohol test results.
{¶ 15} The larger question presented in this appeal is whether the failure to refrigerate a blood sample not in transit or under examination contrary to Ohio Adm.Code 3701-53-05(F) for a period of four hours and ten minutes is a de minimis error or whether it affects the reliability of a gas chromotography test on that sample such that it becomes an inaccurate measurement of alcohol in the blood and justifies suppression of that evidence.
Law and Analysis
{¶ 16} The legislature in Ohio has directed that in a criminal prosecution for a violation of R.C. 4511.19(A) or (B), a bodily substance shall be analyzed in *460 accordance with methods approved by the director of health, R.C. 4511.19(D)(1)(b), and that the director of health “shall determine, or cause to be determined, techniques or methods for chemically analyzing a person’s whole blood,” R.C. 3701.143. Pursuant to these directives, the director of health promulgated Ohio Adm.Code 3701-53-05.
{¶ 17} The regulation in question — Ohio Adm.Code 3701-53-05(F) — is patently clear about what is required when the state decides to obtain a blood or urine sample from persons in this state. It states, “While not in transit or under examination, all blood and urine specimens shall be refrigerated.”
{¶ 18} Several cases involving compliance with the regulations promulgated by the director of health regarding bodily .substances are instructive on the issue before the court. In State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 22, we noted that this court first addressed the application of Ohio Department of Health regulations governing alcohol testing in State v. Steele, 52 Ohio St.2d 187, 370 N.E.2d 740 (1977), and stated that Steele “established that rigid compliance with alcohol-testing procedures in the Ohio Administrative Code is not a prerequisite to the admissibility of alcohol-test results.” Burnside at ¶ 22. We also discussed State v. Plummer, 22 Ohio St.3d 292, 490 N.E.2d 902 — a case in which we considered the consequences of the state’s failure to refrigerate urine samples that were not in transit or under examination. We recognized that in Plummer, this court concluded that a three-to-four-hour interval without refrigeration did not render the test results inadmissible. Burnside at ¶ 23. We also acknowledged Plummer’s holding that “ ‘[a]bsent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm.Code 3701-53-05 are admissible in a prosecution under R.C. 4511.19.’ ” Id., quoting Plummer at the syllabus. Notably, in Burnside, we did not overrule Plummer, but we limited Plummer’s substantial-compliance standard to “excusing only errors that are clearly de minimis.” Burnside at ¶ 34.
{¶ 19} After Burnside, we issued State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, in which we examined the admissibility of a hospital blood-alcohol test in an aggravated-vehicular-homicide prosecution. In that case, we concluded that “in a criminal prosecution for aggravated vehicular homicide that depends upon proof of an R.C. 4511.19(A) violation, laboratory test results are admissible only if the state shows substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm.Code Chapter 3701-53, even if the test was conducted in an accredited hospital laboratory.” Mayl at ¶ 3. Although we ultimately determined that the hospital laboratory’s lack of proper permits issued by the director of health and its disposal of the blood sample within a matter of days after testing were not minor procedural deviations from the regulation that could be excused, id. at ¶ 52, we nonetheless concluded that there had been substantial compliance *461 with other Administrative Code requirements, including Ohio Adm.Code 3701-53-05(F), id. at ¶ 50. In support of that determination, we stated:
Failure to refrigerate a sample for as much as five hours has been determined to substantially comply with Ohio Adm.Code 3701-53-05(F), which states that “[w]hile not in transit or under examination, all blood and urine specimens shall be refrigerated.” State v. Plummer (1986), 22 Ohio St.3d 292, 294-295, 22 OBR 461, 490 N.E.2d 902.
Mayl at ¶ 50, fn. 2.
{¶ 20} In this case, Emery’s failure to refrigerate the blood sample for four hours and ten minutes is within the five-hour period of nonrefrigeration that our footnote in Mayl sanctioned as substantial compliance with Ohio Adm.Code 3701-53-05(F). And holding that the period of nonrefrigeration in this case substantially complies with the Ohio Administrative Code is consistent with our determination in Plummer that a three-to-four-hour interval when the specimen may not have been refrigerated also substantially complied with a former version of Ohio Adm.Code 3701-53-05(F) requiring refrigeration of specimens while not in transit or under examination. Plummer at 294-295.
{¶ 21} While strict compliance with the regulation is preferable, we recognize inherent logistical issues that may make strict compliance unrealistic. We therefore conclude that failing to refrigerate a blood specimen for a period of four hours and ten minutes before placing it in transit for analysis is a de minimis error and does not render the test result inadmissible for failure to substantially comply with Ohio Adm.Code 3701-53-05(F).
Burden-Shifting Test
{¶ 22} When evaluating the admissibility of blood-alcohol test results, Ohio courts have applied the burden-shifting test we announced in Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24. In light of continuing litigation and confusion about substantial compliance with regulations regarding the collection, handling, and testing of bodily substances, we clarify the Burnside burden-shifting test as follows.
{¶ 23} A defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress evidence; failure to file such a motion “waives the requirement on the state to lay a foundation for the admissibility of the test results.” State v. French, 72 Ohio St.3d 446, 451, 650 N.E.2d 887 (1995). The state then has the burden to show that it substantially complied with regulations prescribed by the director of health in the Ohio Administrative Code. If the state meets its burden of going forward with the evidence in this regard, a presumption *462 of admissibility arises, and the burden then shifts back to the defendant to rebut the presumption by demonstrating prejudice from the state’s failure to strictly comply with the applicable regulations in the Ohio Administrative Code.
{¶ 24} In accordance with this procedure, we recognize that Baker initially filed a pretrial motion to suppress the results of his blood-alcohol test. That filing shifted the burden of going forward with evidence to the state to demonstrate that although it failed to refrigerate the specimen before placing it in transit, it nonetheless substantially complied with Ohio Adm.Code 3701-53-05(F). The state relied on Plummer and Mayl and argued that the failure to refrigerate the blood sample for four hours and ten minutes is a de minimis error. We recognize that the state’s error in failing to refrigerate the blood sample in this case is de minimis and that it substantially complied with the regulation. The state’s substantial compliance created a presumption of admissibility of the blood-alcohol test results, shifting the burden back to Baker to rebut that presumption by demonstrating prejudice from the lack of strict compliance with Ohio Adm.Code 3701-53-05(F). Because both the trial and appellate courts ruled in his favor on the substantial-compliance issue, Baker has not yet had an opportunity to demonstrate prejudice from the lack of strict compliance with the regulations. The proper forum for such a determination is the trial court. Accordingly, the judgment of the appellate court is reversed and the matter is remanded to the trial court with instructions to provide Baker an opportunity to go forward with evidence in this matter.
Conclusion
{¶ 25} R.C. 4511.19(D)(1)(b) and 3701.143 authorize the director of health to promulgate regulations for analyzing bodily substances, and in conformity therewith, the director promulgated Ohio Adm.Code 3701-53-05(F).
{¶ 26} Our decisions in Plummer and Mayl are instructive on the question of substantial compliance with Ohio Adm.Code 3701-53-05(F) and establish that the state’s error in failing to refrigerate a specimen for four to five hours before placement of the specimen in transit to a laboratory for analysis is a de minimis error and does not render the test results inadmissible.
{¶ 27} In Burnside, we established a burden-shifting test, and we clarify that if the state demonstrates substantial compliance with the regulations for collecting, handling, and testing specimens, the court should afford the defendant an opportunity to go forward with evidence to rebut the presumption of admissibility by demonstrating that the failure to strictly comply may have caused an unreliable test result that does not properly measure alcohol content in the specimen. Here, the state demonstrated substantial compliance, but Baker has not been given the opportunity to rebut the presumption of admissibility. Accordingly, we remand the cause to the trial court to provide Baker with an *463 opportunity to demonstrate prejudice and to conduct further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Pfeifer, Kennedy, and FRENCH, JJ., concur.
O’ConnoR, C.J., concurs, with an opinion joined by LanzingeR, J.
O’Neill, J., dissents, with an opinion.