[Cite as *State v. Assefa*, 2023-Ohio-385.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220062 |
| | | TRIAL NOS. C-21TRC-17718B,C |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| YARED FITSUM ASSEFA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: February 10, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

CROUSE, **Presiding Judge.**

{¶1} Defendant-appellant Yared Assefa was arrested in August 2021 for operating a vehicle while under the influence of alcohol ("OVI") and related offenses after he crashed his car into an unoccupied sedan that was abandoned on the side of the highway. Assefa refused to perform any field-sobriety tests prior to his arrest or submit to any chemical tests after his arrest. He filed a motion to suppress, arguing that there was not probable cause to support his arrest. After the trial court denied his motion, Assefa pleaded no contest to failure to maintain reasonable control over a vehicle and proceeded to a bench trial on the OVI. The trial court found him guilty of both charges. In this appeal, Assefa challenges the trial court's denial of his motion to suppress, as well as the sufficiency and weight of the evidence to support his OVI conviction. For the reasons set forth below, we affirm the judgments of the trial court.

## I. Procedural History

{¶2} Assefa was charged with OVI, in violation of R.C. 4511.19(A)(1)(a); OVI with a refusal to take a chemical test within 20 years of a prior conviction, in violation of R.C. 4511.19(A)(2); and failure to maintain reasonable control over a vehicle, in violation of R.C. 4511.202.

{¶3} Assefa filed a motion to suppress evidence "obtained from [his] warrantless search/seizure and subsequent arrest," claiming that there was no probable cause to support his arrest. Following a hearing, the trial court denied Assefa's motion.

{¶4} Assefa pleaded no contest to the failure-to-control charge and was found guilty by the court. The state dismissed the charge of OVI with a refusal to test. At a bench trial on the OVI charge, the state incorporated by reference the testimony

from the suppression hearing without objection. The trial court found Assefa guilty of OVI. On the OVI charge, the court sentenced Assefa to three days in jail, a $375 fine, and a one-year suspension of his driver's license, plus costs. On the failure-to-control charge, the court declined to impose any additional sentence and remitted costs. This timely appeal followed.

## *II. Factual History*

{¶5} Around 11:00 p.m. on August 1, 2021, Officer Alex Madyda of the Sharonville Police Department was dispatched to the scene of a vehicular accident on northbound Interstate 75 near mile marker 16. Upon arriving at the scene, Madyda found an abandoned car in the shoulder of the highway that had been struck in the left-rear quarter. Some distance in front of the car, Madyda saw a Jeep on the shoulder with substantial damage to the front-right quarter, including the front-right wheel having been so heavily damaged as to leave the wheel sitting parallel to the road's surface. Madyda testified that a groove in the surface of the roadway ran from a spot near the abandoned car to underneath the damaged Jeep. Debris from vehicle damage littered the area.

{¶6} When Madyda approached the Jeep, he found Assefa alone in the Jeep sitting in the driver's seat. He was talking on his cell phone. Assefa told Madyda that he was arranging for his vehicle to be towed away from the accident. Madyda noted that Assefa had watery, bloodshot eyes and seemed confused. Madyda asked Assefa for his driver's license, and Assefa handed it to Madyda through the partially opened window. Madyda noted the odor of an alcoholic beverage. Madyda returned to his patrol car to run Assefa's license and request an out-of-state check of Assefa's record because Assefa had a California driver's license. Madyda told the dispatcher that he

was particularly interested in any prior OVIs because he had "a feeling that this might go that way."

**{¶7}** On the way back to Assefa's Jeep, Madyda confirmed that the abandoned sedan had an abandoned-vehicle tag on the rear window. Madyda recalled seeing the sedan on the shoulder of the highway the night before. When Madyda got back to Assefa's Jeep, Madyda asked Assefa to step out of his vehicle and walk back to the police cruiser with him. While walking to the cruiser, Assefa asked Madyda to walk ahead of him. Madyda insisted that Assefa walk ahead of him for officer safety. Madyda testified that he saw Assefa stumbling while walking to the patrol car and that he seemed unsteady on his feet. Madyda again noted the odor of an alcoholic beverage coming from Assefa.

**{¶8}** When they arrived at Madyda's patrol car, Madyda asked Assefa what had happened. Assefa said the car had been in the travel lane when he hit it. After Madyda pointed out the abandoned-vehicle tag and told Assefa that it meant that the abandoned car was completely in the shoulder, Assefa insisted that it had been protruding into the travel lane. Madyda asked Assefa if he had drunk alcohol that evening and Assefa responded that he had not. Madyda explained to Assefa that he suspected him of driving under the influence of alcohol and asked him to submit to field-sobriety tests. Madyda testified that Assefa refused and said that "he reserves the right to not comply with the tests." Madyda told Assefa that refusal to submit to testing would result in his being arrested. After Assefa again refused to submit to any sobriety testing, Madyda arrested him.

**{¶9}** At the police station, after Madyda informed Assefa of the consequences for refusal to submit to chemical testing for alcohol, Assefa refused to submit to any

testing. Madyda cited Assefa for OVI, OVI with a refusal to test, and failure to maintain control.

### III. Analysis

{¶10}   In his first assignment of error, Assefa argues that the trial court erred by denying his motion to suppress all evidence stemming from his warrantless arrest. In his second assignment of error, Assefa argues that his OVI conviction was based on insufficient evidence and was against the manifest weight of the evidence. We address each argument in turn.

### A. Motion to Suppress

{¶11}   Assefa claims that Madyda did not have probable cause to arrest him at the time Madyda initiated the roadside, warrantless arrest. Assefa argues that the information available to Madyda at the time of the arrest was insufficient to justify a prudent person's belief that Assefa's faculties were appreciably impaired by the consumption of alcohol. As a result, Assefa argues, all evidence flowing from his arrest should have been suppressed.

{¶12}   Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*. We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id*.

{¶13}   Probable cause for a warrantless arrest exists when, based on the totality of the circumstances, " 'the arresting officer, at the time of the arrest, possess[es]

5

sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed.' " *State v. Acoff*, 2017-Ohio-8182, 100 N.E.3d 87, ¶ 11 (1st Dist.), quoting *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 39. Establishing probable cause " 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *State v. Thorton*, 1st Dist. Hamilton Nos. C-170586 and C-170587, 2018-Ohio-2960, ¶ 21, quoting *Illinois v. Gates*, 462 U.S. 213, 243, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), fn. 13. Probable cause is a " 'practical, nontechnical conception.' " *Gates* at 231, quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It does not require officers to rule out an innocent explanation for suspicious facts. *Thorton* at ¶ 22.

{**¶14**} Assefa had collided with a vehicle on the shoulder of the highway causing disabling damage to Assefa's own car and gouging the surface of the roadway. Madyda noticed an odor of alcohol coming from Assefa and testified that Assefa showed other indicia of alcohol consumption: watery and bloodshot eyes, slurred speech, slow response time, and stumbling. Madyda also testified that Assefa was verbally combative. Assefa's refusal to submit to sobriety testing is an additional factor that can be considered as evidence of intoxication "when other incriminating factors are present." *State v. Hall*, 2016-Ohio-783, 60 N.E.3d 675, ¶ 30 (1st Dist.).

{**¶15**} We hold that there was ample evidence to support the trial court's conclusion that Madyda had probable cause to arrest Assefa because Madyda possessed sufficient information to believe that Assefa was under the influence of alcohol.

{**¶16**} Because Assefa's warrantless arrest was supported by probable cause,

we overrule his first assignment of error.

### B. Sufficiency of Evidence

{¶17} Assefa next argues that his OVI conviction must be overturned because it was not supported by sufficient evidence. Assefa challenges his OVI conviction under R.C. 4511.19(A)(1)(a), which provides that: "[n]o person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Assefa argues that the evidence adduced at trial, viewed in the light most favorable to the prosecution, failed to establish the essential elements of the charged offense.

{¶18} When reviewing for sufficiency of the evidence, an appellate court asks whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16. Essentially, the court "asks whether the evidence against a defendant, *if believed*, supports the conviction." (Emphasis sic.) *Id.*

{¶19} To prove that Assefa was "under the influence of alcohol," the state need not show any particular alcohol concentration in Assefa's body through chemical or other tests. *State v. Panzeca*, 1st Dist. Hamilton Nos. C-190474 and C-190475, 2020-Ohio-4448, ¶ 15. It is sufficient for the state to prove that he had consumed alcohol sufficient to "adversely and appreciably impair[] his actions or mental processes and depriv[e] him of that clearness of intellect and control of himself which he would otherwise have had." *State v. Bakst*, 30 Ohio App.3d 141, 145, 506 N.E.2d 1208 (1st Dist.1986), quoted in *Panzeca* at ¶ 15.

{¶20} Further, the state need not conduct field-sobriety or chemical tests and

may instead "rely on 'physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol.' " *Panzeca* at ¶ 16, quoting *City of Cleveland v. Giering*, 2017-Ohio-8059, 98 N.E.3d 1131, ¶ 30 (8th Dist.). Other factors that the state may use to show intoxication include evidence that the defendant caused an accident, refused to submit to a field-sobriety or chemical test, or exhibited a belligerent or combative demeanor. *See State v. Padgett*, 1st Dist. Hamilton Nos. C-200327 and C-200238, 2021-Ohio-2905, ¶ 15 (physiological factors, causing an accident, refusal to submit to sobriety tests); *Hall*, 2016-Ohio-783, 60 N.E.3d 675, at ¶ 30-31 (physiological factors, belligerent and combative demeanor, refusal to submit to sobriety tests); *State v. Colyer*, 1st Dist. Hamilton Nos. C-120347, C-120348 and C-120349, 2013-Ohio-1316, ¶ 9 (physiological factors, general demeanor, causing an accident).

**{¶21}** Madyda testified that Assefa had collided with an abandoned sedan that had been parked on the shoulder of the highway. He testified that Assefa had watery and bloodshot eyes, slurred speech, an odor of alcohol, a slow response time, and he stumbled when he walked. He also testified about Assefa's combative demeanor and refusal to submit to sobriety testing, which are additional factors that can be considered as evidence of intoxication.

**{¶22}** Overall, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Assefa's OVI conviction was based on sufficient evidence.

### C. Manifest Weight of Evidence

**{¶23}** In addition to the sufficiency-of-the-evidence argument, Assefa argues that his OVI conviction is contrary to the manifest weight of the evidence. A manifest-

weight argument "challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). The court should only reverse the conviction and grant a new trial in an "exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶24} In reaching its guilty verdict, the court relied heavily on Madyda's body-worn-camera video ("BWC"), in conjunction with Madyda's testimony. The court believed the officer's testimony that Assefa had watery eyes and an odor of alcohol. The court did not believe Assefa's claim that a parked car "came out of nowhere." The court stated, "It was an abandoned car on the side of the highway." The court further stated that it was able to hear Assefa's slurred speech and watch Assefa stumble on the BWC. The court found that Assefa seemed confused, had a slow response time, and had some difficulty answering the officer's questions. The court stated, "I've watched the video multiple times to try to see if there is anything that would convince me otherwise * * *. And I could not * * * get there."

{¶25} After a thorough review of the record, and weighing all the evidence, we cannot say that this is one of the rare cases in which the trier of fact lost its way.

{¶26} Because Assefa's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we overrule Assefa's second

assignment of error.

### *IV. Conclusion*

{¶27}  For the foregoing reasons, we overrule both of Assefa's assignments of error. Accordingly, we affirm the judgments of the trial court.

Judgments affirmed.

**WINKLER** and **BOCK, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.