[Cite as *State v. Stankorb*, 2023-Ohio-3808.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230097 |
| | | TRIAL NO. C-22TRC-17395A |
| Plaintiff-Appellee, | : | |
| vs. | | |
| | : | |
| ROBERT STANKORB, | | *O P I N I O N.* |
| Defendant-Appellant. | : | |
| | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 20, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Suhre & Associates, LLC,* and *J. Tanner Duncan,* for Defendant-Appellant.

**Bock, Judge.**

{¶1} In a single assignment of error, defendant-appellant Robert Stankorb appeals his conviction for operating a vehicle under the influence in violation of R.C. 4511.19(A)(1)(a). Stankorb challenges the sufficiency and manifest weight of the evidence. He maintains that the state's evidence failed to establish that he was under the influence of alcohol. We disagree and hold that blood-alcohol test results indicating the presence of alcohol in his blood in conjunction with eyewitness testimony describing his erratic driving proved that he operated his motorcycle under the influence of alcohol. Therefore, we affirm his conviction.

## I. Facts and Procedure

{¶2} In May 2022, Stankorb was riding his motorcycle through a shopping center when he struck a curb, lost control, and crashed. The motorcycle landed on Stankorb's leg, lacerating his right femoral artery. Onlookers provided Stankorb aid before first responders arrived and later transported Stankorb to the University of Cincinnati Medical Center. As Stankorb was rushed into surgery, hospital staff withdrew three vials of his blood.

{¶3} Law enforcement secured two search warrants to test his blood, first to test for infectious diseases and second to test for alcohol in Stankorb's blood. In July 2022, the state charged Stankorb with operating a vehicle under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a), failing to maintain reasonable control in violation of R.C. 4511.202, and operating a vehicle with a prohibited blood-alcohol level in violation of R.C. 4511.19(A)(1)(f).

{¶4} The state initially provided a "paper-only" response to Stankorb's discovery requests, which consisted of an incident report, an "impaired driver report," an affidavit and search warrant to test Stankorb's blood, a June 2022 Hamilton County

2

Crime Laboratory Toxicology Report containing the results of a blood-alcohol test, and a traffic-crash report. Unsatisfied, Stankorb moved to compel the state's compliance with his discovery requests for hospital records, warrants, and other records. Following a hearing in November 2022, the trial court granted his motion to compel. In turn, the state supplemented its discovery response to include the hospital records from the day of the crash. But later that month, the trial court sanctioned the state and excluded his medical records from the evidence.

{¶5}    In early December 2022, one month before trial, the state provided another round of supplemental discovery. The following week, citing R.C. 4511.19(E)(3), Stankorb demanded "testimony of the person who signed the lab report." The state provided Stankorb with a "Toxicology Lab Report dated 12/19/22" on December 29, 2022. In early January 2023, Stankorb demanded testimony of the person who signed the December 2022 report.

{¶6}    Stankorb elected for a bench trial. On the day of the trial, Stankorb requested a mistrial and leave to file a motion to suppress evidence related to Stankorb's blood. He argued that the state's December 8 supplemental discovery response was the first time he had access to "all of the medical records." And, he argued, those medical records formed the basis of the search warrants to test his blood. The trial court rejected that argument because Stankorb knew of the facts relevant to his argument as early as August 2022.

{¶7}    In terms of physical evidence, the state's case consisted of the 911 audio, bodycam footage, blood tubes, and the June 2022 lab report. During the trial, Stankorb objected to the admission of the blood vials and laboratory report. Those objections were overruled. Regarding the June 2022 lab report, the trial court explained it "was provided in August, and any issues with it, or the results, could have

3

been challenged prior to." Of particular significance, the report includes the results of a headspace gas chomatography analysis, which revealed a ".183 g/100 mL" concentration of alcohol in Stankorb's blood. In addition, the trial court heard testimony from an eye witness, first responders, and the forensic scientist responsible for testing Stankorb's blood and preparing the report.

{¶8} Nicole Savage described the moments before and after Stankorb's crash. She was sitting on the patio of a nearby restaurant when she first noticed Stankorb, who was "revving his engine on his motorcycle being really obnoxious." She recalled that he drove away from the restaurant, "cut across" a roundabout, hit a speed curb, and lost control of his motorcycle. Following the crash, Stankorb, pinned to the ground beneath his motorcycle, pulled "his leg[] from underneath of the bike." Stankorb had lacerated his thigh. Savage and others tried to help Stankorb, who remained conscious, but "had lost a lot of blood." Law enforcement officers arrived and applied a tourniquet to the wound.

{¶9} Among the initial responders was Hamilton County Sheriff's Deputy Barry Johnson. When he arrived, Savage and other civilians were administering aid to Stankorb, who had already experienced substantial blood loss. Stankorb's condition required immediate life-saving measures, preventing officers from interviewing Stankorb or administering chemical tests at the scene. Another responder, Deputy Caroline Kotlas, photographed the scene and determined that the driver was "[t]raveling the wrong way as a result of cutting through a roundabout[,] hit a mounted curb area, [and] lost control of his vehicle."

{¶10} Tim Huber, an emergency-room paramedic at the University of Cincinnati Medical Center, withdrew Stankorb's blood on the night of the crash. Huber described the procedures used to withdraw and label the vials of Stankorb's blood.

{**¶11**} Beth Bauer, a toxicologist in the Hamilton County Crime Laboratory, was responsible for testing "biological samples for the presence of drugs and alcohol," analyzing the test results, and preparing laboratory reports. Bauer identified and described the procedures used for testing blood for alcohol and other substances. She recalled testing Stankorb's blood and preparing the June 2022 lab report. Bauer explained that the headspace gas chromatography revealed the presence of ethyl alcohol in Stankorb's blood. During cross-examination involving chain-of-custody issues and lab procedures, Bauer confirmed that she was the sole lab employee to perform the headspace gas chromatography on Stankorb's blood.

{**¶12**} The trial court found Stankorb guilty of failing to maintain reasonable control of his motorcycle and OVI. But the trial court found him not guilty of operating a vehicle with a prohibited blood-alcohol content. The trial court cited the "gap in the [testimony of the] blood draw to the lab with timing and storage with all of that, and whether or not – and there was no testimony on it – whether or not that would affect the actual level." There was "no doubt in the Court's mind that there was alcohol," but there was doubt as to whether "anything, from the time of the draw to the time that the warrant was obtained, to the time it was transported there, did it affect the level."

{**¶13**} The trial court sentenced Stankorb to a combination of alternative sentencing and community control. Stankorb appeals in a single assignment of error.

## II. <u>Law and Analysis</u>

{**¶14**} Stankorb challenges the sufficiency and weight of the state's evidence for his OVI conviction under R.C. 4511.19(A)(1)(a). Under R.C. 4511.19(A)(1)(a), "[n]o person shall operate any vehicle * * * under the influence of alcohol." Stankorb agrees that he operated a motor vehicle. But he disputes whether the evidence proved that he was under the influence at the time of the crash.

5

Sufficient evidence supports Stankorb's conviction.

**{¶15}** Stankorb raises a sufficiency argument, asserting that the state failed to meet its burden of producing evidence that he was under the influence, an element of the offense. *See State v. Lowery*, 160 Ohio App.3d 138, 2005-Ohio-1181, 826 N.E.2d 340, ¶ 19 (1st Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring). To assess the sufficiency of the state's evidence, we view the evidence in a light most favorable to the state to see if no " 'rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.' " *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶16}** To prove that Stankorb was under the influence, the evidence must show that "he had consumed alcohol sufficient to 'adversely and appreciably impair[] his actions or mental processes and depriv[e] him of that clearness of intellect and control of himself which he would otherwise have [had].' " *State v. Yared Fitsum Assefa*, 1st Dist. Hamilton No. C-220062, 2023-Ohio-385, ¶ 19, quoting *State v. Bakst*, 30 Ohio App.3d 141, 145, 506 N.E.2d 1208 (1st Dist.1986). And to prove impairment, "the state need not show any particular alcohol concentration in [the defendant's] body through chemical or other tests." *Id*. Rather, " 'the behavior of the defendant * * * is the crucial issue.' " *State v. Hassler,* 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶ 11, quoting *Newark v. Lucas*, 40 Ohio St.3d 100, 104, 532 N.E.2d 130 (1988). Circumstantial evidence can establish a defendant's impairment. *See State v. Padgett*, 1st Dist. Hamilton Nos. C-200327 and C-200238, 2021-Ohio-2905, ¶ 12; *see also State v. Zentner,* 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 18.

**{¶17}** Here, the blood-alcohol test results confirmed, at a minimum, that Stankorb had alcohol in his system at the time of the crash. *See State v. French*, 72 Ohio St.3d 446, 452, 650 N.E.2d 887 (1995) ("[I]n a charge under R.C. 4511.19(A)(1), the chemical test result is not dispositive of guilt, but merely constitutes some evidence to consider, if probative, in addition to all other evidence regarding the conduct of the defendant."). Additionally, Savage described Stankorb's erratic driving before the crash. He "was revving his engine on his motorcycle being really obnoxious." At a roundabout, he "went the wrong way" and "cut across the roundabout." He struck a speedbump, lost control, and landed with his leg pinned against the ground. Remarkably, he was able to rip "his leg [] from up underneath of the bike." When considered in conjunction with the blood-alcohol test results, the eyewitness observations and Stankorb's erratic driving are factors that may prove that he was under the influence of alcohol. *See Assefa* at ¶ 20; *see also Padgett* at ¶ 15; *State v. Moore*, 7th Dist. Mahoning No. 02 CA 195, 2004-Ohio-3203, ¶ 19.

**{¶18}** Stankorb's sufficiency argument hinges on the absence of several key factors that have traditionally served as compelling evidence of impairment, factors upon which this court has consistently relied to uphold OVI convictions under R.C. 4511.19(D)(1)(a). In particular, Stankorb invokes *Assefa* to emphasize the absence of evidence involving slurred speech, watery and bloodshot eyes, alcohol odor, slow response time, stumbling while walking, combative demeanor, or a refusal to submit to testing. *See Assefa* at ¶ 24 ("The court believed the officer's testimony that Assefa had watery eyes and an odor of alcohol."). While these factors are commonly regarded as "classic indicia of intoxication," they are not "prerequisite[s] to a reasonable judgment that a person is under the influence." *State v. Baker*, 9th Dist. Summit No. 29167, 2020-Ohio-19, ¶ 12 (rejecting a similar argument). As explained in *Baker*, the

7

law does not "necessarily require[e] any of the aforementioned factors to be present for an OVI conviction to be based on sufficient evidence." *Id.*

{¶19} Stankorb also relies on our opinion in *State v. Bowden*, 1st Dist. Hamilton No. C-190396, 2020-Ohio-4556, to contend that the state's evidence falls short of establishing a nexus between an ingested intoxicant and an appreciable impairment. In *Bowden,* we explained that to convict an individual under R.C. 4511.19, the state must present evidence that a driver's " 'impaired condition resulted from being under the influence of *a drug of abuse.*' " (Emphasis added.) *Id.* at ¶ 14, quoting *State v. Collins*, 9th Dist. Wayne No. 11CA0027, 2012-Ohio-2236, ¶ 20. But when the effects of a drug are widely recognized and understood, "expert testimony linking ingestion of the drug with an indicia of impairment is unnecessary." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 19. In our society "[l]ay persons are familiar with alcohol and its effects, in various quantities, on judgment and reflexes." *City of Chillicothe v. Lunsford*, 2015-Ohio-4779, 49 N.E.3d 852, ¶ 20 (4th Dist.). Indeed, alcohol " 'intoxication is probably one of the most familiar subjects of nonexpert evidence.' " *Id.*, quoting *Columbus v. Mullins*, 162 Ohio St. 419, 421, 123 N.E.2d 422 (1954). The eyewitness evidence, in conjunction with the blood-alcohol test results, sufficiently established Stankorb's impairment.

{¶20} Next, Stankorb appears to argue that the blood-alcohol test results from the lab report cannot be considered as evidence in a prosecution for OVI under R.C. 4511.19(A)(1)(a). He argues that the state's failure to present expert testimony under R.C. 4511.19(D)(1)(a) rendered the results inadmissible. R.C. 4511.19(D)(1)(a) states, in relevant part, that in prosecutions for driving under the influence under R.C. 4511.19(A)(1)(a), "the result of any test of any blood or urine withdrawn and analyzed

at any health care provider * * * may be admitted with expert testimony to be considered with any other relevant and competent evidence."

**{¶21}** But Stankorb's blood was obtained via a warrant and analyzed at a state laboratory. And when a defendant's blood "is obtained pursuant to a search warrant," R.C. 4511.19(D)(1)(b) permits a trial court to admit the results of a forensic blood-alcohol test, "provided that the blood was withdrawn from the accused within three hours of the time of the alleged offense and analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health." *State v. Cast*, 12th Dist. Butler No. CA2021-09-107, 2022-Ohio-3967, ¶ 10.

**{¶22}** Furthermore, Stankorb failed to challenge the admissibility of the blood-alcohol test results and lab report in a motion to suppress. It is well established that "[a] defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress evidence; failure to file such a motion 'waives the requirement on the state to lay a foundation for the admissibility of the test results.' " *State v. Baker*, 146 Ohio St.3d 456, 2016-Ohio-451, 58 N.E.3d 1114, ¶ 23, quoting *French*, 72 Ohio St.3d at 451, 650 N.E.2d 887.

**{¶23}** In August 2022, Stankorb received the search warrant application, search warrant, and July lab report. While Stankorb was able to exclude his medical records from the evidence in November 2022, he failed to challenge the admissibility of the July lab report. So, the "chemical test results are admissible at trial without the prosecution demonstrating that: the bodily substance was withdrawn within the time frame specified in the statute; the bodily substance was analyzed in accordance with the methods approved by the Ohio Department of Health; and the analysis was

9

conducted by a qualified individual holding a permit issued by the Ohio Department of Health." *State v. Curtis*, 10th Dist. Franklin No. 09AP-1199, 2011-Ohio-3298, ¶ 27.

**{¶24}** In sum, the test results and eyewitness testimony suffice to establish Stankorb's impairment. In other words, when we view the evidence in a light most favorable to the state, a rational trier of fact could have found that Stankorb operated his motorcycle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a).

<u>Stankorb's conviction is not contrary to the manifest weight of the evidence.</u>

**{¶25}** Stankorb also maintains that his conviction is against the manifest weight of the evidence. In a manifest-weight challenge, we " 'review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.' " *Assefa,* 1st Dist. Hamilton No. C-220062, 2023-Ohio-385, at ¶ 23, quoting *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. We are cautioned to "only reverse the conviction and grant a new trial in an 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717, at paragraph three of the syllabus.

**{¶26}** Stankorb's manifest-weight argument appears to attack the credibility of the blood-alcohol test results. While he waived any challenge to the admissibility of the results, that waiver does not foreclose his ability to challenge "the competency, * * * relevancy, authenticity, and credibility of the chemical test results." *French*, 72 Ohio St.3d at 452, 650 N.E.2d 887. Stankorb acknowledges that the test results revealed a ".183 g/100 mL" concentration of alcohol in his blood but argues that number is meaningless without expert testimony.

**{¶27}** In support of that argument, he cites his acquittal of the charge under R.C. 4511.19(A)(1)(f), which makes it a crime to operate a vehicle with "a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood." But "the State is not required to support its case under R.C. 4511.19(A)(1)(a) with evidence of the exact amount of alcohol." *State v. May,* 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, ¶ 49. And while the trial court questioned whether "a gap in the blood draw to the lab with timing and storage * * * would affect the actual level" of alcohol identified in the blood-alcohol test results, it explained that "there's no doubt in the Court's mind that there was alcohol." In doing so, the trial court relied, in part, on Bauer's testimony regarding the forensic testing.

**{¶28}** Following our review of the record and consideration of the evidence, we agree with the trial court and do not consider this to be an exceptional case in which the evidence weighs heavily against a conviction.

**{¶29}** Therefore, we overrule Stankorb's single assignment of error.

### Conclusion

**{¶30}** We overrule Stankorb's assignment of error and affirm his conviction.

Judgment affirmed.

**BERGERON, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.